IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Rashamel Broaddus, #282399,  ) | |
| ) | Civil Action No. 6:10-3091-JFA-KFM |
| Petitioner, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Warden Michael McCall, ) | |
| ) | |
| Respondent. ) | |
| ) | |

   The petitioner, a state prisoner who is represented by counsel, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

   Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

## BACKGROUND OF THE CASE

*Underlying Facts*

   During the early morning hours of August 7, 1999, the body of David Christopher Briggs was found in a vacant lot in Florence. The victim had multiple gunshot wounds. Although neighbors heard gunshots during the night, no one witnessed the shooting. An autopsy later revealed the victim had been shot at least 17 times, which caused him to bleed to death.

   After receiving information concerning a red Grand Am frequenting drug areas, narcotics officers interviewed Dennis Rhodes, a confidential informant and the owner of the vehicle. Rhodes told them that he had reason to believe that someone had been killed in his car. He stated that, on the morning of the murder, he loaned his car to the

petitioner. According to Rhodes, the interior of the vehicle was covered in blood and had bullet holes when the petitioner returned it. Subsequently, the investigating officers impounded and searched Rhodes' vehicle. As part of the continuing investigation, SLED analysis of the blood evidence confirmed a DNA match with the victim. The petitioner was ultimately apprehended in New York where he was hospitalized as a result of another shooting incident.

The petitioner was indicted at the April 2000 term of the Florence County Grand Jury for murder and possession of a firearm during the commission of a crime of violence. (2000-GS-21-544). He was represented by Henry M. Anderson, Jr., Esquire. The petitioner proceeded to trial on February 4-7, 2002, before the Honorable James E. Brogdon, Jr., and a jury.

At trial, the State called Dennis Rhodes as a witness. Prior to Rhodes' testimony, the petitioner's counsel moved to exclude any mention of whether the petitioner was dealing drugs on the night in question. Specifically, counsel argued the evidence should not be admitted as part of the *res gestae* of the charged crimes. He further contended the evidence would be far more prejudicial than probative and should be excluded under Rule 403 of the South Carolina Rules of Evidence. The judge admitted the evidence, finding Rhodes could describe the circumstances of the night of the murder in order to give a full description of the events that occurred that night, including an explanation of Rhodes' involvement with the petitioner. The judge concluded the testimony in question was part of the *res gestae* of the crimes.

Rhodes testified that on the night of the murder he went to Tony Pickett's home where he met several acquaintances including the petitioner. According to Rhodes, everyone was drinking and doing drugs that were supplied by the petitioner. At one point during the evening, the petitioner asked Rhodes if he could borrow his car. Rhodes loaned his car to the petitioner in exchange for cash or crack cocaine because the petitioner stated

he needed to make some phone calls and some deliveries. Rhodes believed the petitioner was going to make drug deliveries because he observed the supply of drugs in the petitioner's hand. The petitioner borrowed the car around 2:30 a.m. and returned it to Rhodes at approximately 6:00 a.m. When Rhodes opened the door to the vehicle, he noticed blood and gunshot holes in the interior. Rhodes testified that the petitioner apologized for the condition of the vehicle and explained that his cousin had been shot and he had taken him to the hospital. The petitioner then gave Rhodes crack cocaine while he and Pickett cleaned the vehicle. The next day, Rhodes found a bullet slug, as well as hair and scalp tissue on the passenger side of the vehicle.

The State offered evidence regarding its theory about what might have precipitated the shooting. J.C. Newsome testified he sold the petitioner a CD player a week prior to the incident. When the petitioner inquired about the CD player, Newsome informed him that the victim had it. Newsome took the petitioner to the motel where the victim was staying, but purposefully brought him to the wrong room when he discovered that the petitioner had a gun and threatened to kill the victim. Kelvin Lucas testified he went to a bar with the victim on the night of the shooting. During the evening, the victim left the bar but returned within a short period of time. Lucas testified the victim seemed upset. Around 4:30 a.m., the victim told Lucas that he had something to go take care of and left the bar. Lucas testified that he observed the victim get into a car with the petitioner. *See State v. Broaddus*, 605 S.E.2d 579, 581-82 (S.C. Ct. App. Nov. 15, 1994).

The petitioner was convicted as indicted and was sentenced by Judge Brogdon to 40 years confinement for murder and to 5 years, concurrent, for the weapons charge. The petitioner is presently confined in the Lieber Correctional Institution of the South Carolina Department of Corrections pursuant to orders of commitment of the Florence County Clerk of Court.

*Direct Appeal*

The petitioner filed a timely notice of appeal. On January 2, 2003, the petitioner, through counsel, filed a Final *Anders* Brief of Appellant questioning:

> Whether the judge erred by refusing to exclude evidence of drug use and dealings, since this evidence was not necessary to a fair presentation of the state's case, and the probative value of the drug evidence was substantially outweighed by its prejudicial effect.

The State of South Carolina waived a response. On September 3, 2003, the South Carolina Court of Appeals entered an Order denying counsel's request to be relieved and restating the issue on appeal to be: "Whether the trial court erred in admitting evidence of the alleged drug usage and dealing as *res gestae* of the crime?" (App. 449). The petitioner filed his Brief of Appellant on December 4, 2003. The Respondent filed its Brief of Respondent on April 23, 2004. On November 15, 2004, the South Carolina Court of Appeals entered its opinion affirming the conviction and finding that any error in the admission of the evidence was harmless. *State v. Broaddus*, 605 S.E.2d 579 (S.C. Ct. App. Nov. 15, 2004) (App. 451-55). The petitioner filed a *pro se* petition for rehearing on December 13, 2004, asserting the appellate court erred by concluding the issue was harmless error. Rehearing was denied on January 20, 2005 (App. 456).

The petitioner filed a *pro se* petition for writ of certiorari on February 9, 2005. The respondent State made a Return on March 3, 2005. On April 19, 2006, the South Carolina Supreme Court issued its letter order that the petition was denied (App. 457). The Remittitur was issued on April 21, 2006 (App. 459).

***PCR Proceedings***

The petitioner subsequently filed an application for post conviction relief ("PCR") on January 31, 2007 (2007-CP-21-178) (App. 460-65). It was amended on June 1, 2007 (App. 467-69) by counsel Charles Brooks. On November 30, 2007, the application was amended again by counsel Brooks to include a claim of "ineffective assistance of appellate counsel" (App. 470). The respondent filed a Return on June 30, 2007 (App. 471-74). An evidentiary hearing was convened at the Florence County Courthouse on December 17, 2008, before the Honorable Benjamin H. Culbertson, Presiding Judge (App. 475). The petitioner raised the following issues in his PCR application:

> I. Ineffective assistance of trial counsel:
> 1. failure to prepare and investigate;
> 2. failure to object and eliciting damaging testimony;
> 3. failure to object to State's closing argument.

The petitioner was present at the PCR hearing and was now represented by Tricia A. Blanchette, Esquire. The State was represented by Julie Thames, Assistant Attorney General. Testimony was received from the petitioner and his trial counsel, Henry M. Anderson of the Florence bar (App. 477-538).

The Honorable Benjamin H. Culbertson denied and dismissed the application by written Order filed April 16, 2009 (App. 552-64). The petitioner filed a Motion for Reconsideration pursuant to Rule 59(e), SCRCP (App. 566-69). The State filed its Return on May 4, 2009 (App. 570-73). An Amended Order of Dismissal was filed June 4, 2009 (App. 575-88).

*PCR Appeal*

The petitioner timely noticed his appeal on June 8, 2009. Counsel Blanchette filed a Petition for Writ of Certiorari pursuant to SCACR Rule 243 on October 7, 2009. In it, the petitioner raised the following issues:

> 1. Whether the lower court erred in finding that trial counsel was not ineffective due to his failure to properly prepare and investigate?
>
> 2. Whether the lower court erred in finding that trial counsel did not render ineffective assistance of counsel when he failed to enter contemporaneous objections and when he elicited damaging testimony?
>
> 3. Whether the lower court erred in finding that trial counsel did not render ineffective assistance of counsel when he failed to object to the State's closing argument?

(Petition at 2). The respondent State of South Carolina on November 6, 2009, filed its Return to the Petition. On September 2, 2010, the Supreme Court of South Carolina entered its letter order that the petition for certiorari was denied. The petitioner filed a petition for rehearing. On October 6, 2010, the court entered an order denying the petition for rehearing. The remittitur was entered on October 6, 2010.

*Federal Habeas Action*

In his December 1, 2010, petition, which was filed while he was proceeding *pro se*, the petitioner made the following allegations:

> I. Trial judge erred in admitting evidence of drug use and drug dealing as res gestae of the crime.
>     A. Over my lawyers objection, trial judge admitted drug evidence stating its probative value outweighed its prejudicial effect. The Court of Appeals ruled that the trial judge erred in admitting drug evidence, but they denied my direct appeal.
>
> II. Ineffective Assistance of Counsel.
>     1. Counsel failed to properly prepare and investigate before trial.

> 2. Counsel failed to enter contemporaneous objections to drug evidence, and he elicited damaging testimony to drug evidence.
> 3. Counsel failed to object during state's closing argument. (This concludes all three issues raised at my PCR hearing).

On February 3, 2011, counsel for the petitioner made an appearance in this action. On February 10, 2011, the respondent filed a motion for summary judgment. The petitioner, through counsel, filed his opposition to the motion for summary judgment on March 30, 2011. In the response to the motion for summary judgment, the petitioner states that he wishes to withdraw Ground One (pet. resp. m.s.j. at p. 2 n.2). Furthermore, the petitioner has narrowed his grounds for relief to the following:

> 1. Defense counsel was ineffective for failing to make proper objections to drug use and drug dealing and for eliciting such testimony from the State's witnesses;
>
> 2. Defense counsel was ineffective for failing to object to the prejudicial comments made by the prosecutor during closing argument;
>
> 3. Defense counsel was ineffective in his preparation for trial; and
>
> 4. Defense counsel was ineffective for failing to object to testimony that the petitioner was involved in a shooting in New York following the shooting in this case.

(Pet. resp. m.s.j. at pp. 5-6).

## APPLICABLE LAW AND ANALYSIS

Title 28, United States Code, Section 2254(d) and (e) provides in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

7

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. §2254(d), (e).

The Fourth Circuit Court of Appeals has stated as follows regarding the standard of review in cases, like the instant case, that are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> For a claim that was adjudicated on the merits in state court proceedings, this Court will not issue a writ of habeas corpus under the AEDPA unless (a) the state court decision is in "square conflict" with Supreme Court precedent that is controlling as to law and fact or (b) if no such controlling decision exists, "the state court's resolution of a question of pure law rests upon an objectively unreasonable derivation of legal principles from the relevant [S]upreme [C]ourt precedents, or if its decision rests upon an objectively unreasonable application of established principles to new facts." *Green v. French*, 143 F.3d 865, 870 (4th Cir.1998). "In other words, habeas relief is authorized only when the state courts have decided the question by interpreting or applying the relevant precedent in a manner that reasonable jurists would all agree is unreasonable." *Id.* When a petitioner has properly presented a claim to the state court but the state court has not adjudicated the claim on the merits, however, our review of questions of law and mixed questions of law and fact is *de novo*. *See  Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir.1998) (applying pre-AEDPA *de novo* standard of review to claims of ineffective assistance of counsel that were properly raised, but not adjudicated on merits in state court).

*Weeks v. Angelone*, 176 F.3d 249, 257-58 (4th Cir. 1999).

8

Claims of ineffective assistance of counsel are governed by the two-part test established in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the petitioner "must show that counsel's performance was deficient." *Id.* at 687. To prove deficiency, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Second, the petitioner must show that the deficient performance actually prejudiced him, *i.e.* "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. Finally, the Court in *Strickland* held that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies," and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* at 697.

### *Drug Evidence*

The petitioner has withdrawn his allegation challenging the Court of Appeals' decision on direct appeal. He does not dispute that the admission of Rhodes' testimony was harmless in light of testimony at trial by Tony Pickett and Van Purvis, another individual present on the night in question, that was not objected to by defense counsel. The petitioner does allege, however, that his trial counsel's failure to object to such evidence was prejudicial to him.

The Court of Appeals' opinion on direct appeal provides an overview of the drug evidence admitted at the petitioner's trial:

> [Dennis] Rhodes testified on the night of the murder he went to Tony Pickett's home where he met several acquaintances including Broaddus. At one point during the evening, Broaddus asked Rhodes if he could borrow his car. Rhodes loaned his car to Broaddus in exchange for cash or crack cocaine because Broaddus stated he needed to make some phone calls and "some deliveries." Rhodes believed Broaddus was going to make drug deliveries because he observed the supply of drugs

9

> in Broaddus's hand. Broaddus borrowed the car around 2:30 a.m. and returned it to Rhodes at approximately 6:00 a.m. When Rhodes opened the door to the vehicle, he noticed blood and gunshot holes in the interior. Rhodes testified that Broaddus apologized for the condition of the vehicle and explained that his cousin had been shot and he had taken him to the hospital. Broaddus then gave Rhodes crack cocaine while he and Pickett cleaned the vehicle.

*State v. Broaddus*, 605 S.E.2d 579, 581 (S.C. Ct. App. 2004).

The Court of Appeals found that this testimony was improperly admitted because

> [T]he testimony … "was not essential to a full presentation of the State's case, nor was it so intimately connected with the crimes charged that its introduction was appropriate to complete the story of the crime." … The testimony presented established that Broaddus threatened to kill the victim because he stole the CD player that Broaddus purchased from Newsome. Lucas testified he observed the victim get into a car with Broaddus shortly before the murder. Rhodes testified that when Broaddus returned the vehicle it was covered in blood and had bullet holes. The decedent's blood was positively matched to the evidence found in Rhodes's vehicle. Thus, evidence of drug use and drug dealing was not necessary for the State's presentation of its case. Furthermore, the drug evidence was not inextricably intertwined with the crimes charged given there was no evidence that Broaddus and the victim were involved in any type of drug transaction. Because the testimony did not form a part of the *res gestae* of the crimes, the trial judge erred in admitting the evidence. Additionally, even assuming the testimony was relevant, its probative value was outweighed by its unfair prejudice.

*Id.* at 583 (quoting *State v. Bolden*, 398 S.E.2d 494, 495 (S.C. 1990)). However, the Court of Appeals found that the admission of Rhodes' testimony was harmless because

> Newsome testified that Broaddus threatened to kill the victim shortly before the murder. Lucas testified that he witnessed the victim get into a vehicle with Broaddus several hours before the shooting. Additionally, witnesses who were present when Broaddus returned Rhodes's automobile testified concerning the condition of the car and the presence of blood in the car. The DNA from the blood in the car was a positive match to the

10

> victim. Furthermore, there is evidence that Broaddus absconded to New York after the incident. …
>
> Furthermore, the drug evidence is cumulative to other unobjected to testimony. Specifically, Van Purvis, who was present at Pickett's home, testified that Broaddus provided the crack cocaine and intended to pay Rhodes with crack cocaine to borrow his automobile. Pickett also testified that Rhodes would be paid with crack cocaine for lending his car to Broaddus.

*Id.* at 583-84.

At the PCR hearing, the petitioner alleged that defense counsel was ineffective for failing to continue his objection to the drug evidence throughout the course of the State's case and for eliciting such evidence during his cross-examination of the State's witnesses (App. 503-509). The petitioner also admitted a list of testimony given by the State's witnesses that he believed warranted objections by defense counsel (*id.* 547-48). When questioned about his failure to make contemporaneous objections to the testimony regarding the drug dealings and drug usage, defense counsel stated that he did not have a specific reason why he did not raise such objections (*id.* 530-31). On cross-examination by the State, defense counsel essentially testified that he abandoned the argument after he lost the motion *in limine* prior to Rhodes' testimony (*id.* 536).

> The PCR court denied relief on this issue:
>
> This Court finds no ineffective assistance of counsel with regard to the allegation that trial counsel failed to object to all testimony regarding drug use and drug dealing. Trial counsel did in fact object to such testimony and was overruled. The trial court found the evidence of drug use and drug dealing was part of the *res gestae*. The Court of Appeals found that the evidence was not part of the *res gestae* but affirmed the convictions, finding that the evidence did not affect the outcome of the trial. This Court finds trial counsel attempted to suppress any testimony about drugs and when he was overruled, he used the testimony as part of his trial strategy in that he attempted to show that the witnesses' testimony was not credible because they were all under the influence during the time in question. This Court finds the Applicant has failed to prove that the

11

>  outcome of the case would have been different had trial counsel continued to object.

(*id.* 562, 585). On appeal to the Supreme Court of South Carolina, the petitioner renewed his argument that trial counsel was ineffective for failing to renew his objections to the drug evidence (certiorari pet. at pp. 11-16). The Supreme Court denied certiorari.

This court finds that the PCR court did not err in finding counsel was not ineffective in this regard. As argued by the respondent, once the trial court found the testimony about drugs was part of the *res gestae* of the case, trial counsel changed his strategy. Trial counsel then focused on attacking the credibility of the witnesses by conducting thorough cross-examinations of the witnesses, during which several witnesses admitted that they were drinking and/or doing drugs, they were high, and their memories of what times events took place could have been incorrect. Further, trial counsel was able to get Newsome to admit that he did not call law enforcement when the petitioner stated he was going to kill the victim.

The petitioner has also failed to show prejudice as a result of the alleged deficiencies in his trial counsel's performance. The PCR court found that the petitioner failed to prove that the outcome of the case would have been different had trial counsel continued to object (App. 562, 585). The petitioner argues that this finding is not entitled to deference because it is "based upon a flawed interpretation of the Court of Appeals' ruling on direct appeal" (pet. resp. m.s.j. at p. 11). As set forth above, on direct appeal, the Court of Appeals found that any error in the admission of the evidence about drugs and drug dealing was harmless as it would not have affected the outcome of the trial. *See Broaddus*, 605 S.E.2d at 583. The Court of Appeals noted that evidence of the petitioner's guilt included the following: Newsome testified that the petitioner threatened to kill the victim shortly before the murder; Lucas testified that he witnessed the victim get into the vehicle with the petitioner several hours before the shooting; witnesses who were present when the

12

petitioner returned Rhodes' automobile testified concerning the condition of the car and the presence of blood in the car; the DNA from the blood in the car was a positive match to the victim; and the petitioner absconded to New York after the incident. *Id.* at 583. In the next paragraph, the Court of Appeals stated: "Furthermore, the drug evidence is cumulative to other unobjected to testimony. Specifically, Van Purvis, who was present at Pickett's home, testified that Broaddus provided the crack cocaine and intended to pay Rhodes with crack cocaine to borrow his automobile. Pickett also testified that Rhodes would be paid with crack cocaine for lending his car to Broaddus." *Id.* at 583-84.

The petitioner argues that these two paragraphs in the Court of Appeals' opinion mean that the error in admitting the drug evidence was harmless only when all of the evidence, including the drug evidence, is reviewed (pet. resp. m.s.j. at p. 11). This court disagrees with the petitioner's interpretation. The Court of Appeals specifically stated, "When guilt has been conclusively proven by competent evidence such that no other rational conclusion can be reached, this court should not set aside a conviction because of errors not affecting the result." *Broaddus*, 605 S.E.2d at 583 (citing *Hill v. State*, 567 S.E.2d 847, 851 (2002)). The court then cited the overwhelming evidence of the petitioner's guilt as discussed above. As a separate reason for finding the error in admission of the drug evidence harmless, the Court of Appeals found that the drug evidence was cumulative to other unobjected to testimony. *Id.* at 584. The PCR court's finding that the petitioner did not show prejudice is reasonable given the overwhelming evidence of the petitioner's guilt.

Here, the petitioner has failed to show the PCR court unreasonably applied United States Supreme Court precedent in deciding this issue, and he has also failed to show by clear and convincing evidence the PCR court reached an unreasonable factual determination given the evidence and record before it. Accordingly, this ground for relief fails.

***Closing Argument***

The petitioner next argues that his trial counsel was ineffective for failing to object to the portions of the State's closing argument that referred to him as a drug dealer and that the homicide was related to drug activity. The portion of the prosecutor's closing argument at issue is as follows:

> And what were they doing there that night? They didn't hold anything back. They were drinking beer and smoking crack. And where did they get the crack cocaine from that night? From the defendant Rashamel Broaddus. That's what he was doing there on that particular night. … Did Rashamel give a reason why he needed the car that night? I thought Dennis' testimony was interesting. He said, well, he said he had to run some errands and he was holding some crack cocaine, so it was pretty obvious why he needed the car on that particular night.

(App. 373).

> [T]he State first wondered why would Rashamel even want to pay thirty dollars for a radio like this that somebody else was just giving away. But, you know, when people are involved in drugs they've got have a place to stash it. Certainly a large radio boom box like this would be a good place to stash drugs because they can't just have it lying out in the open. … So, you know, it may be one thing for somebody to steal a radio, but, you know, what if somebody stole a radio with drugs inside? You know, you're looking at a totally different ball of wax because, you know, clearly when Rashamel killed Chris Briggs, you know, this wasn't just he fired one or two shots, there were at least twelve shots fired into that body. He was trying to send a message somewhere.

(*Id.* 388). Finally, the prosecutor speculated as to the reason why the petitioner could have traveled to the lot with the victim: "I don't know if there was supposed to be a drug transaction or what, but they drove out by the old abandoned club there in Christopher

14

Lane" (App. 392)[1].  Trial counsel did not raise an objection to any portion of the State's closing argument.

During the PCR hearing, the petitioner argued that trial counsel was ineffective for failing to object to the portions of the State's closing argument referring to him as a drug dealer and arguing that the homicide was related to drugs (App. 515-17).  With regard to the motivation for the crime, the petitioner specifically argued that the prosecutor's argument was based on "facts … that weren't introduced during the trial" (App. 517). Trial counsel testified that he did not recall why he did not raise an objection to the State's closing argument and that he did not recall the State arguing "evidence that wasn't even admitted" (App. 531-32).

In the Amended Order of Dismissal, the PCR court denied relief on this allegation, ruling:

> Further, this Court finds no ineffective assistance of counsel for failing to object to the closing argument where he referred to the Applicant as a drug dealer because no such argument was made. Trial counsel testified he did not recall the solicitor referring to the Applicant as a drug dealer. When asked to point out these references in the transcript, the Applicant could not find them and insisted the transcript had been altered. This Court finds no such references were made; therefore, no ineffective assistance of counsel existed.

(App. 587).  As noted by the petitioner (pet. resp. m.s.j. at p. 16) and the respondent (resp. m.s.j. at p. 47 n. 9), in response to questioning by the PCR court, the petitioner identified three portions of the trial transcript where he felt the prosecutor was characterizing him as

---

[1]The respondent argues that this quote is from defense counsel's closing argument (resp. m.s.j. at p. 48 n. 10).  The respondent is mistaken.  Defense counsel's closing argument begins on page 398 of the Appendix.

15

a drug dealer (*see* App. 515-17 (citing App. 373, 374, 392)).[2] The Supreme Court of South Carolina denied certiorari.

The United States Supreme Court has made clear that a petitioner is not entitled to relief based upon the closing argument of a prosecutor, unless that argument so infected the trial with unfairness as to make the resulting conviction a denial of due process. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). The standard in *Donnelly* is a very high standard for a defendant to meet. "'[I]t is not enough that the remarks were undesirable or even universally condemned.'" *State v. Tubbs*, 509 S.E.2d 815, 818 (S.C. 1999) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)). "Because many lawyers refrain from objecting during opening statement and closing argument, absent egregious misstatements, the failure to object during closing argument and opening statement is within the 'wide range' of permissible professional legal conduct." *U.S. v. Necoechea*, 986 F.2d 1273, 1281 (9th Cir. 1993) (quoting *Strickland v. Washington*, 466 U.S. 668, 689 (1984)).

This court agrees with the respondent that the petitioner has failed to show that counsel was deficient or that there was a reasonable probability that the result of the proceeding would have been an acquittal (or new trial) had counsel objected. Over objection, Rhodes testified that, on the night of the victim's death, the petitioner had supplied him with drugs at Pickett's house. He stated he had a conversation with the petitioner who asked him if he could use Rhodes' 1990 Pontiac Grand Am "to make some phone calls and make some deliveries." Rhodes interpreted the deliveries to be drugs, since he had them in his hand. In agreement with lending the petitioner his car, the petitioner "was going to reimburse [Rhodes] in cash or crack cocaine." Rhodes stated he then loaned

---

[2]The petitioner argues that the PCR court's determination of this issue should not be given deference based upon the PCR court's "crucial misstatement of fact" in stating that the petitioner did not identify references in the trial transcript where the prosecutor characterized him as a drug dealer (pet. resp. m.s.j. at p. 17). This court finds that even under a *de novo* standard of review this ground fails for the reasons set forth below.

16

him his car at 2:30 a.m. (App. 131-32). He said the petitioner returned around 6:00 a.m. Rhodes stated that he heard his car and became angry and went outside and found the petitioner in the car and saw "blood everywhere" (*id.* 132). The petitioner told him his cousin had been shot, and he had dropped his cousin off at the hospital. He apologized to Rhodes about the car being messed up. Rhodes stated: "at that point Rashamel [the petitioner] handed me some more crack cocaine which I smoked in the yard right there on the spot while Rashamel and Tony Pickett gathered up bloodstained towels . . ." and cleaned up the car (*id.* 133). Here, the prosecutor's closing argument was based on the evidence presented at trial and reasonable inferences therefrom. Accordingly, this allegation of error is without merit.

### *Preparation for Trial and New York Shooting*[3]

Prior to the incident at issue here, which occurred on August 7, 1999, the petitioner was a victim of multiple gunshot wounds (the "Florence shooting") that required his hospitalization at McLeod Regional Medical Center in Florence, South Carolina, from July 22-28, 1999 (App. 542-46). The petitioner alleges that defense counsel was ineffective for failing to offer substantive evidence of his physical condition following this shooting to demonstrate that he would have been unable to move the victim after shooting him in Rhodes' vehicle.

During the PCR hearing, the petitioner alleged that defense counsel was ineffective for failing to conduct a greater investigation into his case. In particular, he alleged that defense counsel should have further investigated his medical records and presented that testimony at trial (App. 498-501). The medical records were admitted as an exhibit during the PCR hearing, which demonstrated that the petitioner had been shot in the abdomen, right shoulder, and left forearm on July 22, 1999, and had been released from

---

[3]These two allegations of error are addressed together based upon some prior confusion of the two issues, which will be discussed below.

the hospital on July 28, 1999, after extensive surgery (App. 542-46). The petitioner contended that this evidence would have shown that he would have had a difficult time shooting the victim in the vehicle, pulling him out to the ground, and shooting him again on the ground outside the vehicle. Trial counsel did not remember whether he had gotten the records, but he did remember talking with the petitioner about the injuries he had sustained in the shooting. He testified that he was able to demonstrate through cross-examination that perhaps the petitioner could not have committed the crime based on his injuries. Trial counsel also indicated with regard to the medical records that he wanted to be able to have the "last word to the jury" (App. 535-36).

> The PCR court denied relief on the medical records issue, finding:
>
> This Court finds no ineffective assistance of counsel with regard to the Applicant's allegation that trial counsel should have introduced his medical records to show that the Applicant was unable to move or bury the victim's body. The Applicant has not shown that the evidence would have changed the result at trial. This Court finds that trial counsel did raise the issue of the victim's size and did raise the issue of the Applicant's injury. In addition, the evidence at trial did not show definitively that *anyone* actually lifted the victim. The evidence demonstrated that the victim was most likely shot while sitting in the car and his body was later found on the ground. There was no testimony that anyone *lifted* him out, it is conceivable that he fell out of the car or that the Applicant pushed him out without having to lift him.

(App. 584 (emphasis in original)).

As the PCR court found, trial counsel did raise the issue of the victim's size and the petitioner's injury. Further, there was no trial testimony indicating that the petitioner lifted or moved the victim, and it is entirely conceivable that the victim was shot in the car and fell out as a result of being shot at least a dozen times. The petitioner could have pushed the victim out with his hands or feet; the jury knew that the petitioner had been shot and injured prior to the incident at issue, but they apparently did not believe that fact rendered him incapable of killing the victim. Moreover, as pointed out by the respondent,

the petitioner's testimony with regard to the injuries changed. At one point, he testified that he could not have committed the murder "because I had the staples in my stomach and the stitches and I wasn't able to like bend over too much," but later he testified that the staples had been removed three days after he got out of the hospital (App. 499, 513). Thus, the staples would have been taken out at least a week before the shootings (App. 498).

The petitioner has failed to show that the PCR court unreasonably applied United States Supreme Court precedent in deciding this issue, and he has also failed to show by clear and convincing evidence that the PCR court reached an unreasonable factual determination given the evidence and record before it. Accordingly, this allegation of error fails.

Following the victim's killing, the petitioner went to New York. While in New York, he was shot again (the "New York shooting") and was admitted to a hospital in Brooklyn (App. 328, testimony of Investigator Mark Graham). During his closing argument, the solicitor commented on the coincidence of the petitioner being involved in another shooting following the incident at issue (App. 383-84). The petitioner alleges that defense counsel was ineffective for failing to object to this testimony and subsequent argument by the prosecutor as inadmissible evidence of other crimes, wrongs, or acts, pursuant to Rule 404, SCRE.

At his PCR hearing, the petitioner argued that defense counsel was ineffective for failing to object to evidence of the New York shooting being admitted during trial (App. 509-10). Trial counsel testified that he did not recall any specific reason for failing to object to that testimony (App. 531).

The PCR court denied relief on the admissibility of the evidence of the New York shooting, ruling:

> This Court finds no ineffective assistance of counsel for counsel's failure to object to testimony about the shooting in New York. The Applicant complains that this allowed the jury to

19

> hear about prior bad acts by him. However, he also complains that trial counsel did not introduce his medical records with regard to the injuries he sustained in that shooting. He apparently wanted the jury to know about his medical condition but not know how he sustained the injury. The Applicant was a victim in that shooting and trial counsel attempted to use the Applicant's weakened condition as part of the theory of defense. This Court finds trial counsel was not ineffective in this regard.

(App. 585-86).

Obviously, as argued by the petitioner, the PCR court conflated the two shootings into one shooting. The New York shooting occurred *after* the incident at issue here. The medical records issue related to the Florence shooting, which occurred *prior* to the incident at issue here. In the motion for summary judgment, the respondent also confuses the two shootings and essentially repeats the ruling of the PCR court as a reason to deny relief on the New York shooting issue (pet. m.s.j. at pp. 38, 42). Given the confusion on this matter and as the respondent has not briefed the issue of whether trial counsel was ineffective for failing to object to the evidence and argument by the prosecutor regarding the subsequent New York shooting, this court recommends that summary judgment should be denied at this time on this issue, and the respondent should be allowed an opportunity to file a supplemental motion for summary judgment on this ground for relief.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the respondent's motion for summary judgment (doc. 13) be granted in part and denied in part as set forth above.

s/Kevin F. McDonald<br>
United States Magistrate Judge

August 2, 2011
Greenville, South Carolina