UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Rashamel Broaddus, | ) | C/A No. 6:10-3091-JFA-KFM |
| | ) | |
| Petitioner, | ) | |
| v. | ) | ORDER |
| | ) | |
| Warden Michael McCall, | ) | |
| | ) | |
| Respondent. | ) | |
| _____) | | |

The petitioner, Rashamel Broaddus, is an inmate with the South Carolina Department of Corrections. He is represented by counsel,[1] and has filed this petition under 28 U.S.C. § 2254 challenging his 2002 state court conviction for murder.

The Magistrate Judge assigned to this action[2] has prepared a Report and Recommendation wherein he suggests that the court should grant, in part, the respondent's motion for summary judgment.[3] The Report sets forth in detail the relevant facts and standards of law on this matter, and the court incorporates such without a full recitation.

---

[1] The petitioner filed his original petition *pro se* on December 1, 2010. On February 3, 2011, attorney Jeremy Thompson make an appearance in the matter on behalf of the petitioner.

[2] The Magistrate Judge's review is made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02. The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

[3] An order was issued pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) notifying petitioner of the summary dismissal procedure and possible consequences if he failed to adequately respond to the motion for summary judgment. Petitioner responded to the motion.

1

The parties were advised of their right to file objections to the Report and Recommendation which was entered on the docket on August 2, 2011. The petitioner filed timely objections which the court will address herein.

## PROCEDURAL HISTORY

Petitioner is serving a state sentence of 40 years for murder and 5 years, concurrent, for possession of a firearm during the commission of a crime of violence. He was tried by a jury in February 2002 and convicted as indicted.

The conviction arose from the August 1999 murder of David Briggs, whose body was found in a vacant lot in Florence, South Carolina. The victim had multiple gunshot wounds, and although neighbors heard gunshots during the night, no one witnessed the shooting. An autopsy later revealed that the victim had been shot at least 17 times, causing him to bleed to death.

Dennis Rhodes, a confidential informant for law enforcement, provided information to authorities that on the morning of the Briggs murder, he loaned his red Pontiac Grand Am to the defendant, and when the defendant returned the vehicle, the interior was covered in blood and had bullet holes throughout it. A subsequent blood analysis confirmed that the DNA in the vehicle matched that of the victim.

The defendant/petitioner was ultimately apprehended in New York, where he was being hospitalized as a result of another shooting incident in that state.

### *Post Trial Proceedings*

Subsequent to his conviction, the defendant filed a direct appeal, challenging the trial

2

court's refusal to exclude evidence of drug use and dealings between Rhodes (the confidential informant) and the defendant (Broaddus). The South Carolina Court of Appeals determined that the evidence should not have been admitted, but that in light of the overwhelming evidence produced at trial, any such error was harmless.

After an unsuccessful attempt at a petition for rehearing and for a writ of certiorari, the petitioner filed a state application for Post Conviction Relief (PCR) in January 2007. After two amendments to the PCR, the state judge conducted a hearing, at which time the petitioner was represented by a court-appointed attorney. The PCR court denied and dismissed the PCR by written order in April 2009. Following an unsuccessful appeal of that decision, the petitioner turned to this court, filing the present petition on December 1, 2010.

STANDARD OF REVIEW

*Summary Judgment*

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id*. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e).

Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, *see, e.g.*, *Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir.1990).

### *The AEDPA and 28 U.S.C. § 2254*

Petitioner filed his petition in this court on December 1, 2010. Therefore, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") apply to this case. *See* 28 U.S.C. § 2244(d)(1). It appears the petition is timely and that petitioner has exhausted his state remedies.

The standard of review to be applied "is quite deferential to the rulings of the state courts." Pursuant to the standards set forth in 28 U.S.C. § 2254, a federal court may not grant

a writ of habeas corpus with respect to a claim adjudicated on the merits in state court proceedings unless the state court's adjudication:

(1) 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' 28 U.S.C. § 2254(d)(1); or

(2) 'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' § 2254(d)(2)."

*Burch v. Corcoran*, 273 F.3d 577, 583 (4th Cir. 2001).

The Supreme Court has explained that a state court adjudication is "contrary" to clearly established federal law, only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000).

An unreasonable application is different from an incorrect application of federal law, the former being the requisite showing. Therefore, this court may not issue the writ even if it concludes in its own independent review, that the relevant state court merely made an incorrect or erroneous application of the correct federal principles. *Id.* Demonstrating that a state court's decision is unreasonable requires overcoming "a substantially higher threshold" than simply demonstrating error. *Schriro v. Landigran*, 550 U.S. 465, 473 (2007) (citing *Williams,* 529 U.S. at 410). "When assessing the reasonableness of the state court's application of federal law, the federal courts are to review the result that the state court

5

reached, not whether [its decision] [was] well reasoned." *Larry v. Branker*, 552 F.3d 356, 365 (4th Cir. 2009) (citing *Wilson v. Ozmint*, 352 F.3d 847, 855 (4th Cir. 2003)).

### *Ineffective Assistance of Counsel*

In order to prevail on a claim of ineffective assistance of counsel, petitioner must show that counsel's performance fell below an objective standard of reasonableness, and that counsel's deficiencies prejudiced his defense. *Strickland v. United States*, 466 U.S. 668, 687-692 (1984). The petitioner "must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. The reviewing court "must judge the reasonableness of counsel's challenged conduct of the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. Further, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . ." *Id*. at 689. As the *Strickland* Court observed:

> It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable . . . [E]very effort [must] be made to eliminate the distorting effects of hindsight . . .

*Id.* at 689.

### PETITIONER'S GROUNDS FOR RELIEF

Petitioner raises two grounds in his federal petition for writ of habeas corpus:

I.   Trial judge erred in admitting evidence of drug use and drug dealing as res gestae of the crime.

6

      A.      Over my lawyer's objection, trial judge admitted drug evidence stating its probative value outweighed its prejudicial effect. The Court of Appeals ruled that the trial judge erred in admitting drug evidence, but they denied my direct appeal.

II.      Ineffective Assistance of Counsel.

      1.      Counsel failed to properly prepare and investigate before trial.

      2.      Counsel failed to enter contemporaneous objections to drug evidence, and he elicited damaging testimony to drug evidence.

      3.      Counsel failed to object during state's closing argument.

After the § 2254 petition was filed, counsel for the defendant/petitioner made an appearance and the matter was referred to the United States Magistrate Judge. Before the Magistrate Judge, the respondent moved for summary judgment (ECF No. 13). The Magistrate Judge has filed a Report and Recommendation which suggests that all but one of the claims asserted in this action be dismissed. As to that one remaining claim, the Magistrate Judge points out, correctly, that the State PCR judge who heard defendant's PCR application improperly inflated two other shooting incidents, one that occurred in South Carolina before the event that gave rise to the conviction here, and another that occurred in the State of New York, subsequent to the incident giving rise to the conviction here.

As to the New York shooting incident, the Magistrate Judge recommends that the motion for summary judgment be denied, with leave to the respondent to file a supplemental motion for summary judgment.

In response to the suggestion made by the Magistrate Judge, the respondent has filed a supplemental motion for summary judgment (ECF No. 22) regarding the New York

7

shooting incident, and the petitioner has responded in opposition. It thus appears that the best course of action is for this court to act upon the Report and Recommendation and also to rule upon the supplemental summary judgment motion without returning the action to the Magistrate Judge for another Report and Recommendation as to this one issue.

After carefully reviewing the somewhat complicated trial record in this case, the Report and Recommendation of the Magistrate Judge, the petitioner's objections, the supplemental summary judgment motion, and petitioner's opposition memorandum, the court has concluded that summary judgment is appropriate on all claims, and that this action should be dismissed. In doing so, the court has conducted the required *de novo* review of all issues in the Report and Recommendation to which objection has been made.

## DISCUSSION

### *Drug Evidence*

As noted by the Magistrate Judge, the petitioner has withdrawn his allegation challenging the decision on direct appeal by the South Carolina Court of Appeals. The petitioner does not dispute that the admission of Rhodes testimony regarding drug usage was harmless in light of the testimony at trial by Tony Pickett and Van Purvis ( another individual present on the night of the murder). Defense counsel did not object to the testimony related to drugs by either of these two additional witnesses. However, in the present action, the petitioner contends that his trial counsel's failure to object to evidence of drug usage by Pickett and Purvis amounted to ineffective assistance of counsel.

8

In determining that the testimony by Rhodes regarding drug usage was harmless error, the South Carolina Court of Appeals pointed to the overwhelming evidence of guilt adduced at trial in this case. The evidence included Rhodes's testimony about loaning petitioner his automobile and receiving it blood-spattered and full of bullet holes, as well as testimony that the petitioner had threatened to kill the victim shortly before the murder because of an altercation regarding a CD player.

The Magistrate Judge is of the opinion that the State PCR court did not err in finding that counsel was not ineffective in regard to the drug testimony. As argued by the respondent, once the trial court found that the testimony concerning drugs was part of the res gestae of the case, defense counsel changed his strategy. Counsel determined that the most advantageous course of action would be to focus on the credibility of the witnesses by conducting cross examination delving into the fact that the witnesses against the petitioner were drinking and/or using drugs at the time of the events they observed. In other words, faced with the adverse ruling from the trial court regarding drug testimony by Rhodes, counsel reasonably pursued the best trial strategy available to him at the time.

In objecting to this portion of the Report and Recommendation, the petitioner contends that his trial counsel was deficient in failing to maintain his position regarding drug activity throughout the trial and thereby made the issue a stronger one on appeal. It is argued that since the South Carolina Court of Appeals found that the evidence was inadmissible, "it cannot reasonably be disputed that defense counsel erred in failing to preserve the admissibility of the drug evidence for appeal." The court finds this argument wide of the

9

mark. The fact that the South Carolina Court of Appeals found that the error regarding drug testimony by Rhodes to be harmless is a strong indication that the same conclusion would have been obtained had trial counsel continued to press the issue and argued against the admission of drug testimony from the other two witnesses. The court agrees with the Magistrate Judge that counsel's performance did not fall below the standard articulated in *Strickland*.

*Closing Argument*

The petitioner next argues that his trial counsel was ineffective for failing to object to portions of the State's closing argument that referred to him as a "drug dealer" and that the Briggs's murder was related to drug activity. The portion of the closing argument at issue reads as follows:

> And what were they doing there that night? They didn't hold anything back. They were drinking beer and smoking crack. And where did they get the crack cocaine from that night? From the defendant Rashamel Broaddus. That's what he was doing there on that particular night. … Did Rashamel give a reason why he needed the car that night? I thought Dennis' testimony was interesting. He said, well, he said he had to run some errands and he was holding some crack cocaine, so it was pretty obvious why he needed the car on that particular night.

(App. at 373).

> [T]he State first wondered why would Rashamel even want to pay thirty dollars for a radio like this that somebody else was just giving away. But, you know, when people are involved in drugs they've got have a place to stash it. Certainly a large radio boom box like this would be a good place to stash drugs because they can't just have it lying out in the open. … So, you know, it may be one thing for somebody to steal a radio, but, you know, what if somebody stole a radio with drugs inside? You know, you're looking at a totally different ball of wax because, you know, clearly when Rashamel killed Chris Briggs,

10

> you know, this wasn't just he fired one or two shots, there were at least twelve shots fired into that body. He was trying to send a message somewhere.

(*Id*. at 388).

The State PCR court denied relief on this allegation, determining that the prosecutor did not, in fact, refer to the petitioner as a drug dealer. The State PCR judge went so far as to say that when the petitioner was asked at the hearing to point out references in the transcript wherein he was referred to by the prosecutor as a drug dealer, the petitioner could find no such references and then argued that the transcript had been altered.

On this record, the Magistrate Judge recommends that summary judgment be awarded to the respondent as to this issue. As the Magistrate Judge notes, the United States Supreme Court has made it clear that a petitioner is not entitled to relief based upon the closing argument of a prosecutor unless that argument so infected the trial with unfairness as to make the resulting conviction a denial of due process. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). The standard in *Donnelly* is a very high standard for a petitioner to meet.

This court agrees with the Magistrate Judge that the petitioner has failed to show that counsel was deficient or that there was a reasonable probability that the results of the proceeding would have been an acquittal, or a new trial, had counsel objected.

*Preparation for Trial and the New York Shooting*

In addition to the shooting death of Briggs at issue in this case, the petitioner was involved in two other shootings. One occurred on August 7, 1999, where the petitioner was a victim of multiple gunshot wounds (the "Florence" shooting) that required the petitioner's

11

hospitalization at McLeod Regional Medical Center in Florence, South Carolina. The petitioner argues that defense counsel was ineffective for failing to offer substantive evidence of his physical condition following this shooting to demonstrate that the petitioner would have been unable to move the victim after shooting him in Rhodes's vehicle.

The second shooting occurred *subsequent* to the events that led to petitioner's conviction. This shooting occurred in the State of New York (the "New York shooting"). Following this shooting, the petitioner was admitted to a hospital in Brooklyn, New York. During his closing argument, the solicitor in the petitioner's South Carolina criminal trial commented on the coincidence of the petitioner being involved in another shooting besides the incident at issue. The petitioner alleges that defense counsel was ineffective for failing to object to the testimony regarding the New York shooting and the subsequent argument by the solicitor.

In addressing these two issues, the State PCR judge unfortunately conflated the two additional shootings, wrongly assuming that one or both of them predated the shooting of Briggs that led to the petitioner's conviction in South Carolina. As to the Florence shooting, the Magistrate Judge finds no error on the part of trial counsel. As to the New York shooting, the Magistrate Judge recommends that the motion for summary judgment be denied, with leave to the respondent to file a supplemental motion for summary judgment dealing with the entirely separate New York shooting that was improperly conflated with the Florence shooting by the State PCR judge.

Subsequent to the filing of the Report and Recommendation, the respondent did as the Magistrate Judge suggested, and filed a supplemental motion for summary judgment (ECF No. 22), contending that the issue of the New York shooting is not properly before this court and, alternatively, that if it is, the claim lacks merit.

*The Florence Shooting*

The Florence shooting is discussed under the rubric "preparation for trial" and is essentially an argument that petitioner's trial counsel was ineffective for failing to offer substantive evidence of his physical condition following the Florence shooting to demonstrate that the petitioner would have been unable to move the victim (Briggs) after shooting him in Rhodes's vehicle. It is argued that if defense counsel had conducted a more thorough investigation into this case, he would have further investigated the petitioner's medical records associated with the Florence shooting and been in a better position to suggest to the jury, through testimony, that the petitioner's physical condition was not such that he could lift or move a dead body out of the vehicle he borrowed from Rhodes.

At the PCR hearing, medical records demonstrated that the petitioner had been shot in the abdomen, right shoulder, and left forearm on July 22, 1999, and had been released from the hospital on July 28, 1999, after surgery. As noted above, the shooting of Briggs occurred on August 7, 1999, approximately one and one-half weeks following the petitioner's discharge from surgery for his own gunshot wounds.

The State PCR court denied relief on this issue, pointing out that the evidence at trial did not show definitively how the victim was removed from the vehicle in which he was shot.

13

Instead, the evidence merely demonstrated that the victim was most likely shot while sitting in the car and that his body was later found on the ground. There was no testimony that the petitioner, or anyone else, lifted the victim out of the vehicle. The State PCR judge concluded that it was conceivable that the victim fell out of the car or that the petitioner pushed him out without having to lift the victim out of the car.

The Magistrate Judge agrees with the State PCR judge, observing that it is entirely conceivable that the victim was shot in the car and fell out of the car as a result of being shot at least a dozen times or that the petitioner could have pushed the victim out of the vehicle with his hands or feet.

In objecting to this portion of the Report and Recommendation, the petitioner concedes that there was, in fact, testimony which petitioner labels as "extremely vague" regarding the fact that petitioner was recovering from gunshot wound surgery at the time he shot the victim. Petitioner contends that had the medical records and other evidence been available at trial, it would have created a reasonable doubt as to his guilt of the shooting in question.

The court agrees with the Magistrate Judge that this claim must fail on its merits. There is evidence in the record that the petitioner's surgical stitches were removed three days after he was discharged from the hospital, meaning that the staples were taken out one full week before the Briggs' shooting occurred. On this record, the court cannot say that had counsel's pretrial investigative efforts turned up more in the way of New York medical records, the result would have been the creation of a reasonable doubt in the minds of the

14

jury. The court finds no deficiency in trial counsel's preparation in this regard.

*The New York Shooting*

As noted above, the State PCR judge confused the New York shooting with the Florence shooting, assuming that one or both of them occurred *before* the petitioner's shooting of Briggs. The New York shooting actually occurred subsequent to the murder of Briggs. In this claim, the petitioner contends that his counsel was ineffective for failing to object to testimony that the petitioner was involved in a shooting in New York following the shooting in this case. Investigator Mark Graham testified that he was not able to locate the petitioner following Briggs' shooting despite the fact that a "be on the lookout" (BOLO) was issued regarding the petitioner. It was not until Graham received a memo from a Brooklyn, New York police department that "Mr. Broaddus was in the hospital from a shooting incident that he was involved in up there." No objection was made to this comment, and the prosecution made a passing reference to the New York shooting in his closing argument, saying to the jury, "You start wondering about he's always getting shot, but he got shot again up in New York." (App. at 328).

In moving for summary judgment on this claim, the respondent suggests that because the petitioner raised this claim at the State PCR court level but did not pursue the claim on appeal of the State PCR judge's decision, this claim is exhausted but it is also procedurally barred. This court agrees.

It is well settled that to satisfy the statutory requirements to bring a § 2254 action, a petitioner must first exhaust his claims by presenting them to the highest court with

15

jurisdiction to decide the issue before seeking relief through the federal writ of habeas corpus. *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Moreover, a claim is unexhausted unless the substance of a petitioner's claims are "fairly presented" to the state court. A claim that has not been presented to the highest state court may nevertheless be treated as exhausted if it is clear that the claim would be procedurally defaulted under state law if the petitioner attempted to raise it at this juncture. Thus, the exhaustion requirement is also satisfied when a state procedural rule would bar consideration of the unexhausted claim if the claim were presented to the state court.

The respondent suggests that such is the case here, and this court agrees. The New York shooting issues were raised during the State PCR hearing. However, the petitioner did not appeal the dismissal of this specific ground to the State Supreme Court in his petition for writ of certiorari. The petitioner cannot re-litigate this issue in a successive state PCR application as a matter of state law. *Aice v. State*, 409 S.E.2d 392 (S.C. 1991). Thus, because the petitioner has no other available state court remedies, this court may conclude that he has technically satisfied the exhaustion requirement. However, the petitioner's failure to present these issues to the highest court with jurisdiction to review the claim means that he has defaulted on this ground for federal habeas relief.

Thus, absent a fundamental miscarriage of justice, which petitioner does not assert in this case, this court may not review the claim unless petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law. The petitioner can make no such showing here.

Alternatively, even assuming that the New York shooting incident was properly before this court, the court agrees with the respondent that summary judgment is appropriate on this claim. As the respondent notes in his brief, the mere fact of being a shooting victim does not create an inference of criminal activity on the part of the victim. Indeed, petitioner acknowledges this much because he wanted the jury to know about the Florence shooting as discussed above. The evidence was offered for a legitimate purpose, i.e., to explain where petitioner was located as evidence of his flight from South Carolina to New York. Moreover, being a victim of a shooting does not show a criminal trait that could be inferred by the jury. The same result obtained regarding the prosecutor's closing argument comment regarding petitioner "always getting shot." Again, the prosecutor makes mention only of the petitioner being shot, not being the shooter. On this record, the court concludes that counsel's performance was not deficient under *Strickland*.

For the foregoing reasons, the court will grant summary judgment to the respondent and dismiss the petition with prejudice. The court adopts the Report and Recommendation and incorporates the same herein by reference. Moreover, regarding the supplemental motion for summary judgment (ECF No. 22), the court agrees that no genuine issue of material fact exists and that the respondent is entitled to judgment as a matter of law. All objections to the Report and Recommendation are overruled. The motion by the respondent for summary judgment is granted (ECF Nos. 13, 22), and this action is dismissed with prejudice.

Because the petitioner has failed to make "a substantial showing of the denial of a constitutional right," a certificate of appealability is denied. 28 U.S.C. § 2253(c)(2).[4]

IT IS SO ORDERED.

*Joseph F. Anderson, Jr.*
Joseph F. Anderson, Jr.
United States District Judge

September 14, 2011
Columbia, South Carolina

---

[4] A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2) (West 2009). A prisoner satisfies this standard by demonstrating that reasonable jurists would find both that his constitutional claims are debatable and that any dispositive procedural rulings by the district court are also debatable or wrong. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001).